NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HARPER J. SIMPSON,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI,**
**SECRETARY OF VETERANS AFFAIRS**
*Respondent-Appellee.*

---

2011-7096

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 09-1566, Judge Alan G. Lance, Sr.

---

Decided: September 30, 2011

---

HARPER J. SIMPSON, Beaver Falls, Pennsylvania, pro se.

MEREDYTH COHEN HAVASY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were TONY WEST, Assis-

tant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M, HUGHES, Deputy Director. Of counsel on the brief was MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

———————————————

Before DYK, CLEVENGER, and REYNA, *Circuit Judges*.

PER CURIAM.

Harper Simpson is a Vietnam hero who sustained various injuries during the Vietnam War. This case concerns his claim for increased disability benefits pursuant to post-traumatic stress disorder ("PTSD"). Mr. Simpson appeals the decision of the Court of Appeals for Veterans Claims ("Veterans Court") that affirmed the denial of his PTSD claim for an extraschedular rating. *Simpson v. Shinseki*, No. 09-1566, 2010 WL 4825279 (Vet. App. Nov. 23, 2010) ("*Veterans Court Opinion*"). We *affirm* the decision of the Veterans Court.

## I.   BACKGROUND

Mr. Simpson served on active duty in the United States Army from August 1966 to August 1968. During this time, he engaged in heavy and prolonged combat in Vietnam and received a Bronze Star with Valor for heroism, an Army Commendation Medal with Valor, the Combat Infantryman's Badge, and two awards of the Purple Heart for wounds received in combat. He was treated in both 1967 and 1968 for residuals of shell fragment wounds. Mr. Simpson described his Vietnam experiences to include moving among the piles of enemy dead; searching bodies for intelligence information; searching his fallen friends for personal effects to be

returned to their families; and loading those same friends onto helicopters.

Upon his return to the United States, Mr. Simpson married his wife, Phylis Ann Davenport, on March 14, 1969. Mr. Simpson served in the Army Reserve from 1973 to 1977, mostly as a recruiter. He left the reserves in 1977, less than a year after an assignment where Mr. Simpson acted as an aggressor in a training exercise. Mr. Simpson was unable to move after the firing session began and could not move until an hour after the exercise was over.

Mr. Simpson began treatment for PTSD in November 2000. There are three events that Mr. Simpson and those providing him treatment believe are the origin stressors for his service-connected PTSD. The first two stressors relate to the two combat events where he sustained injuries. The third event was Mr. Simpson watching one of his friends cut in half by a crashing helicopter's blade during battle. "My PTSD began with nightmares in country [Vietnam] and continued sporadically for the next 30 years. [In a]pproximately 1984 [my] condition began to worsen and I finally sought [sic] assistence in November 2000." Simpson, *VA Form 21-526*, Part B, Section III, No. 11 (April 5, 2001), *located in* Record Before the Agency at 769.

Mr. Simpson stated in 2001 that since his discharge from the reserves, he had 23 documented jobs, with 15 months being the longest term at any one particular place of employment. On April 29, 2001, Mr. Simpson resigned from his employment as a Licensed Embalmer and Funeral Director. On the same day, Mr. Simpson applied for compensation for his PTSD. He later started working for the Florida Department of Children and Family Services

as a Child Abuse Investigator. In 2002, Mr. Simpson accepted a new position giving basic health seminars. In 2003, Mr. Simpson began working for the State of Florida writing disaster plans, including plans for possible bioterrorism events. As part of his duties in this position, Mr. Simpson was responsible for nearly 250 people for three days in a special needs shelter. This led to a heart attack and hospitalization, which his medical care providers attributed to his PTSD.

Mr. Simpson first applied for a PTSD claim for service-connected disability benefits in 2001. On February 19, 2002, the Regional Office ("RO") rated Mr. Simpson with a 30 percent rating for his PTSD, using his assigned global assessment of functioning ("GAF") score of 70-75.[1] Mr. Simpson disagreed with the disability rating and filed a written disagreement with the Department of Veteran Affairs ("DVA") for review by a Decision Review Officer at the RO. In September 2002, the RO confirmed the 30 percent rating after receiving more evidence from Mr. Simpson. Mr. Simpson appealed the RO's decision to the Board of Veterans' Appeals ("Board"), which remanded the claim so that Mr. Simpson could be provided with a hearing. After the hearing in September 2003, the claim returned to the Board.

On February 11, 2004, the Board granted Mr. Simpson an increased disability rating of 50 percent. Mr. Simpson appealed this decision to the Veterans Court. The Veterans Court remanded so that the Board could provide adequate reasons or bases for its decision and to

---

[1] A GAF score of 71-80 requires transient and expectable reactions to psychosocial stressors and no more than slight impairment in social, occupational, or school functioning. Simpson Notice of Disagreement of April 8, 2002, *located in* Record Before the Agency at 670.

address whether Mr. Simpson was entitled to an extra-schedular evaluation under 38 C.F.R. § 3.321(b). The Board remanded to the RO, which then granted a Travel Board hearing upon Mr. Simpson's request. The hearing took place on June 30, 2005. In September 2005, the Board again remanded his claim so that the RO could obtain additional evidence in support of Mr. Simpson's claim, including additional DVA treatment records and another medical examination, and to consider the appropriateness for an extraschedular evaluation.

On April 19, 2006, the DVA Appeals Management Center increased Mr. Simpson's rating to 70 percent[2]. Mr. Simpson appealed the 70 percent decision to the Board on January 18, 2007, requesting a 100 percent

---

[2]    The schedule of ratings for mental disorders under 38 C.F.R. § 4.130 provides the following indicators for a 70 percent disability rating:

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

rating. In March 2007, the Board remanded Mr. Simpson's claim because it determined that the RO had not considered Mr. Simpson's entitlement to service connection for a cardiac disorder secondary to PTSD or a total rating based on individual unemployability due to service-connected disabilities, as directed in the Board's September 2005 remand. On October 24, 2007, the DVA Appeals Management Center issued a Supplemental Statement of the Case, where it denied Mr. Simpson's claim for a rating above 70 percent.

In December 2007, Mr. Simpson submitted an additional statement regarding his claim and provided details describing his relationship with his son, who had recently died in a boating collision. The Disabled American Veterans provided Mr. Simpson counsel for the Board's review of the record that the DVA Appeals Management Center provided. On March 12, 2008, the Board remanded Mr. Simpson's claim to the RO because the Veterans Law Judges who conducted the 2003 and 2005 hearings had retired. A third hearing was conducted in July 2008, again with counsel from the Disabled American Veterans representing Mr. Simpson, and the case thereafter returned to the Board. The Board denied Mr. Simpson's claim for an increased disability rating under a schedular rating or an extra-schedular rating on August 22, 2008.

Mr. Simpson appealed as a *pro se* litigant before the Veterans Court. In its reply brief, the government asserted that Mr. Simpson had abandoned all arguments other than the extraschedular rating claim. The Veterans Court addressed the extraschedular rating claim and affirmed the Board's determination that no extraschedular consideration was required. *Veterans Court Op.* "In this case, the Board decision thoroughly discussed the appellant's symptoms and the applicable rating criteria in

determining that he was not entitled to either a schedular rating of 100% or referral for an extraschedular rating." *Id.* at \*3.

Mr. Simpson timely appealed the judgment of the Veterans Court to this Court.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Except to the extent that an appeal from the Veterans Court's decision presents a constitutional issue, this Court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."  38 U.S.C. § 7292(e)(1).  In other words, we generally lack jurisdiction to review challenges to the Board's factual determinations.  *See, e.g.*, *Johnson v. Derwinski*, 949 F.2d 394, 395 (Fed. Cir. 1991).  With regard to statutory interpretation, 38 U.S.C. § 7292(d)(1) provides:

> The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Appeals for Veterans Claims that the Court of Appeals for the Federal Circuit finds to be—

**(A)**    arbitrary, capricious, an abuse
of discretion, or otherwise not
in accordance with law.

## B.  THE VETERANS COURT DECISION

In order to receive compensation for disabilities, a veteran must establish that an injury is service-connected. *See* 38 U.S.C. § 1110.  Once a disability is found to be service-connected, "[t]he 1945 Schedule for Rating Disabilities will be used for evaluating the degree of disabilities in claims for disability compensation, disability and death pension, and in eligibility determinations."  38 C.F.R. § 3.321(a).  Generally, evaluating a disability using the corresponding or analogous diagnostic codes contained in the rating schedule is sufficient. *See* 38 C.F.R. §§ 4.20 and 4.27.

When the veteran does not meet the schedular requirements for the requested disability compensation rating, the regulations provide for another review of a veteran's claim in exceptional cases.  For exceptional cases, the assignment of extraschedular ratings are authorized:  "[T]he Under Secretary for Benefits or the Director... is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities."  38 C.F.R. § 3.321(b)(1).

The Veterans Court utilized a three-step process to determine whether an extraschedular rating was warranted.  In the first step, the Board or the RO must determine whether the schedular evaluations for the

service-connected disability are inadequate.[3]  *Thun v. Peake*, 22 Vet. App. 111, 115 (2008).  The second step requires the RO or the Board to determine whether the record exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization."  *Id.*  The third step determines whether an extraschedular rating should be assigned.  *Id.*  Here, the Veterans Court found that Mr. Simpson's claim did not reach the second or third steps because the first step, a threshold question, was not met.  *Veterans Court Op.* at *3.

In this case, the Board analyzed the evidence of record and found that Mr. Simpson did not meet the 100 percent rating criteria for PTSD.  *Id.*  The Board based its determination primarily because his disability did not interfere with his work beyond the interference contemplated by a 70 percent rating.  *Id.*  Because this is a factual determination, we have no jurisdiction to review Mr. Simpson's claim.  38 U.S.C. § 7292(e)(1).

In his brief, Mr. Simpson states that the Veterans Court has denied him due process and that this is "the main issue of this appeal."  Appellant. Br. 7.  Mr. Simpson apparently claims he was denied due process when the RO failed to use its own manuals and directives in determining his compensation.  In its reply brief, the government asserts that Mr. Simpson's due process claim is essentially one of statutory interpretation, not a constitutional claim.  We agree that the question before this Court is not a constitutional issue.  We further determine that

---

[3]  Although the Board decided Mr. Simpson's appeal prior to *Thun*, the Veterans Court determined that the Board's analysis was not clearly erroneous.  The Veterans Court then conducted its review of the Board's analysis using the *Thun* analysis.  *Veterans Court Op.*

any argument regarding statutory interpretation is without merit. Accordingly, we dismiss Mr. Simpson's appeal for lack of jurisdiction and affirm the November 23, 2010 decision of the Veterans Court.

## AFFIRMED

Each party shall bear its own costs.